In the Matter of the Application of JOHN POTTS and Others, Petitioners, for an Order of Mandamus against ABRAHAM KAPLAN, President, and Others, Members of and Constituting the Municipal Civil Service Commission of the City of New York, Respondents.

Supreme Court, New York County, May 2, 1933.

*H. Eliot Kaplan* [*H. Eliot Kaplan* and *Albert de Roode* of counsel], for the petitioners, for the motion.

*Field & Field* [*Reginald Field* of counsel], for John B. Duffy, and others, intervenors, opposed.

*Arthur J. W. Hilly, Corporation Counsel,* for the respondents.

LEVY, J.   This application for a peremptory order of mandamus is made by four persons on the promotion eligible list for lieutenant in the fire department of the city of New York, and three on a like list for sergeant in the police department.   The petition asks that the municipal civil service commission be directed to rescind its action in granting preferences for promotion out of order of standing on the eligible list to four war veterans who claim to be disabled, pursuant to section 21 of the Civil Service Law, as amended by chapter 374 of the Laws of 1930.

The petitioners take the position that the preference was allowed in violation of law and impeached the rights of other persons on the respective eligible lists whose ratings were higher than those favored with preference.   The claims for preference allowed by the local commission are based upon the language of section 21, which, in part, reads as follows: " In every public department and upon all public works of the state of°New York and of the cities, counties, towns and villages thereof, any honorably discharged soldiers, sailors, marines or nurses of the army, navy or marine corps of the United States disabled in the actual performance of duty in any war, to an extent recognized by the United States veterans' bureau, who are citizens and residents of this state and were at the time of their entrance into the military or naval service of the United States, and whose disability exists at the time of his or her application for such appointment or promotion, shall be entitled to preference in appointment and promotion without regard to their standing on any list from which such appointment or promotion may be made to all competitive and non-competitive positions provided their qualifications and fitness shall have been ascertained as provided in this chapter and the rules and regulations in pursuance thereof; and a person thus preferred shall not be disqualified from holding any position in the civil service on account of his age or by reason of any physical disability provided such age or disability does not render him incompetent to perform the duties of the position applied for."

Under the statute and the rules adopted thereunder, the persons given preference were placed at the head of their lists notwithstanding the fact that their respective standings ranged from 303

to 695. In other words, the highest one of the four preferred jumped over 300 places and the lowest one nearly 700 places. The authority for the statute of 1930 is a constitutional amendment adopted by the people in the election of 1929, which authorized preference to disabled veterans. This amendment is article 5, section 6, of the Constitution, and the language of section 21 of the Civil Service Law, as amended, is virtually that of the constitutional provision.

Complaint is made that respondents, in disregard of the fact that the medical examiners of the commission found no actual disability existed and recommended the rejection of the claim for preference, nevertheless arbitrarily moved the four alleged disabled war veterans to the head of their respective lists. On the other hand, it appears that the action was not entirely capricious, but based upon a certificate issued by the United States Veterans' Bureau certifying to the existence of disability. The question arises as to what force should be given to this certificate, and this depends largely upon the interpretation of the statute. The conditions with which a claim for preference must comply as expressed in the statute are thus analyzed in *Matter of Morgan* v. *Ford* (143 Misc. 887, 889):

" 1. The claimant must have been an honorably-discharged soldier, sailor, marine or nurse of the army, navy or marine corps of the United States.

" 2. He must have been disabled in the actual performance of duty in some war.

" 3. The disability must have been recognized by the United States Veterans Bureau.

" 4. He must be a citizen and resident of this State and must have been such at the time of his entrance into the military or naval service.

" 5. The disability must exist at the time of his application for appointment or promotion."

There is no dispute that the veterans have complied with the first and fourth conditions, but questions arise as follows:

(a) Were the preferred veterans disabled in the actual performance of duty in the war to an extent recognized by the United States Veterans' Bureau?

(b) Did disability exist at the time of their application for appointment or promotion?

It may be helpful to approach the answer to these questions, which are by no means simple — because of the absence in the statute of a specific definition of " disability " — by referring to the policy of the State in the matter of preference to veterans. The present constitutional amendment, article 5, section 6, as adopted in 1929, superseded former article 5, section 9, of the Constitution

of 1894. The historical antecedents of that amendment are exhaustively considered in *Matter of Keymer* (148 N. Y. 219), and it is only necessary, therefore, to treat this feature briefly. It is to be remembered that the merit system in the civil service is a matter of comparatively recent growth, but the fundamental importance of it and its thoroughly impartial administration were so well recognized at the time of the Constitutional Convention of 1894 that a proposal was made to incorporate in the organic law the principle that all appointments and promotions be made according to merit and fitness, to be ascertained, so far as practicable, by competitive examinations. This rigid policy, however, was somewhat relaxed by incorporating in the proposed amendment a provision that honorably discharged soldiers and sailors of the Civil War, who were citizens and residents of the State, should be entitled to preference without regard to their standing on any list from which appointment or promotion might be made. With this relaxation in favor of Civil War veterans, the civil service provision became a part of the Constitution of the State. Commenting upon the rule of construction of this clause, the court in *Matter of Keymer* (*supra*) thus expressed itself: " We are fully convinced, however, of the wisdom of a well regulated civil service in the state and all its civil divisions. Experience has demonstrated that competitive examinations have greatly benefited the public service.

" This being so, the war veterans, in common with all other good citizens, will favor a rigid enforcement of the civil service provisions of the Constitution."

These observations, laying down as they do, strict canons of construction, are equally applicable in the interpretation of the present provision.

With the passing of years, the relaxation in favor of Civil War veterans ceased to be of any practical importance. But the World War, with the large number of disabled veterans, led to demand for some measure of recognition to those who had participated in it. The Federal World War Veterans' Act made extensive provision for those who had participated in the World War, particularly for those who had suffered and were still suffering from disability, and it established the United States Veterans' Bureau for the purpose of administering and enforcing the provisions of the act. The purpose of the statute (Act of June 7, 1924, chap. 320; 43 U. S. Stat. at Large, 607; U. S. Code, tit. 38, § 422) was " to provide a system for the relief of persons who were disabled " from personal injuries suffered, or disease contracted in the military or naval service. Obviously, the compensation payable was intended to

equalize the disabled veterans' reduction in earning capacity. Not all disabilities were so compensable, it being provided that no compensation shall be payable for reduction in earning capacity rated at less than ten per cent. The reference to the World War Veterans' Act is pertinent because of the fact that our State statute as well as the constitutional provision gives preference to honorably discharged soldiers and sailors " disabled in the actual performance of duty in any war, to an extent recognized by the United States veterans' bureau, * * * and whose disability exists at the time of his or her application."

The framers of the constitutional provision apparently deemed it necessary to have some uniform form or standard to determine *first*, whether the existing disability for which preference might be claimed was the result of war service, and *second*, the extent to which such disability was a real factor in impairing the veteran's earning capacity. Not every disability would necessarily entitle a veteran to preference. He might have been severely injured in the war and the disability resulting might have continued subsequently to an extent recognized by the Veterans' Bureau. If, however, his injury had subsided, even though the scars of it remained, he might not be in a position to claim preference, by reason of the non-existence of present disability.

A sensible interpretation of the phrase " to an extent recognized by the United States veterans' bureau " must go further than merely finding that the veteran has some disability. The latter must be of a kind recognized by the Bureau as materially impairing his earning capacity. A technical disability alone, even if found by the Veterans' Bureau, which had no appreciable effect upon an average person's earning capacity, would not and should not give an applicant a claim to preference in derogation of the strict constitutional principles which safeguard the merit system in the civil service. Any other construction would tend to nullify that system by granting preference to some, on mere technical grounds, over others more meritorious who have equal claim to the gratitude of their fellow-citizens for patriotic services rendered.

Indeed, a previous determination by the Veterans' Bureau would be necessary to indicate that the veteran's disability was the result of war service. A present determination of the continuance of such disability would, it seems to me, also be essential, but not necessarily by the Veterans' Bureau but by the local authorities. The latter by applying the rules established by the Bureau and such appropriate local rules not inconsistent therewith, might determine whether the veteran's present disability continues to such an extent

as materially to impair his earning capacity. Any other interpretation would probably have the effect of rendering the local authorities mere automata.

In the instant case the medical examiners of the municipal civil service commission reported that the applicants for preference were suffering no disability. The commission, however, after first denying preference, overruled itself on the strength of previous reports of the Veterans' Bureau that certain disability existed. If the action of the commission was based upon an interpretation of the law that a prior recognition of the existence of some disability on the part of the Veterans' Bureau was final and conclusive, it was erroneous. A contemporaneous report of an examination by the Bureau showing the existence of disability which tended to a material degree to affect the applicant's earning capacity, might have such conclusive weight. If the determination of the commission indicated a material reduction in earning capacity resulting from disability suffered in the war, the court would not be likely to interfere by way of mandamus. But the finding seems to have been based on no such ground, but only on a presumption founded on an inconclusive determination by the Veterans' Bureau. I hesitate, however, to grant peremptory mandamus because of a possible issue of fact as to whether the veterans so favored are actually suffering from disability which will materially tend to diminish their earning capacity.

The application is, therefore, granted to the extent of allowing an alternative order of mandamus with preference in the trial of the issue for the first day of the June term next ensuing. Settle order.